## SERBINOFF *v.* DUKAS.

1. APPEAL AND ERROR—EXCLUDED EVIDENCE—SPECIAL RECORD.

   The trial court's refusal to admit oral testimony tending to show that portions of written lease requiring that liquor license be maintained on leased premises and was not transferable except with the consent of the lessor were inserted for security purposes only *held,* not reversible error, where not even a request for permission to make a special record was made.

2. SAME—SPECIAL RECORD—EXCLUDED EVIDENCE.

   Correct practice requires that a special record of offered, but rejected, testimony should be made to preserve for proper review the question of the admissibility of excluded testimony in chancery cases.

3. SAME—EXCLUDED EVIDENCE—REMAND.

   The showing that a chancery case should be remanded for the taking of excluded testimony must be an unusually strong one as to the need and diligence.

4. DAMAGES—LOST PROFITS—LIQUOR LICENSE.

   Assessment of damages in suit to retransfer liquor license which defendant had transferred to premises across street from premises leased to defendant and upon which plaintiffs had theretofore had a liquor license, so as to allow plaintiffs the 10% profit on liquor sales they would have had for period leased premises were without such a license, *held,* proper under evidence presented.

5. INTOXICATING LIQUORS—RETRANSFER OF LICENSE—DAMAGES—EQUITY.

   Decree ordering retransfer of liquor license to plaintiffs' premises upon which a grocery and liquor business had been conducted and awarding plaintiffs damages for loss of profits from liquor business *held,* equitable.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2]  3 Am Jur, Appeal and Error §§ 352–354.
[3]  3 Am Jur, Appeal and Error § 1210 *et seq.*
[4, 5]  30 Am Jur, Intoxicating Liquors §§ 140, 141.

Appeal from Oakland; Holland (H. Russel), J. Submitted January 15, 1957. (Docket No. 66, Calendar No. 46,968.) Decided February 28, 1957.

Bill by Joe Serbinoff and Vasilka Serbinoff against George E. Dukas for specific performance of agreement to assign liquor license and for damages occasioned by nonperformance. Cross bill for injunctive relief in respect to store name. Decree for plaintiffs. Defendant appeals. Affirmed.

*Patterson & Patterson and Barrett,* for plaintiffs.

*Estes & Cooney,* for defendant.

BLACK, J. Plaintiffs are owners of business property in Oakland county's West Bloomfield township. Prior to dealing with defendant they successfully conducted a general store on the premises and sold intoxicants therefrom by authority of what is known as an S.D.D. liquor license.[*] In October of 1946, by means of the bill of sale and lease we are to consider, plaintiffs sold the business to defendant and one Dallas and let the store building to the 2 for a term of 5 years from and after November 15, 1946, with a 5-year renewal option in favor of the lessees. Dallas, defendant's then partner, later withdrew and has no interest in the present controversy. The lease and bill of sale contain special covenants (presently quoted) dealing with continued utilization, subject to approval of the State liquor control commission, of the all-important liquor license.

August 14, 1951, by what is termed in the record a notice of renewal, defendant sought of plaintiff Joe Serbinoff a "new lease;" not for the lease-stipulated

[*] The term "S.D.D." refers to specially designated distributors. See CL 1948, § 436.19, as amended by PA 1954, No 72 (CLS 1954, § 436.19, Stat Ann 1955 Cum Supp § 18.990).—REPORTER.

renewal period but for a shorter period to be negotiated. The chancellor states the remaining essential facts, and the principal issues of the case, in language as follows:

"Subsequent to the notice of August 14, 1951, the defendant built a new store building almost directly across the street from the plaintiff's property, held over in possession after the termination of the lease for a period of 21 days for which no rent has been paid and then moved across the street into his own building, taking said S.D.D. license with him. Since moving the defendant has been operating his grocery and meat store at his new location, has been using the liquor license (as renewed) and receiving the benefits of such license.

"Plaintiffs redecorated the store premises formerly leased to the defendant, purchased new fixtures and opened up for business on January 10, 1952, but have been unable to obtain an S.D.D. liquor license. The commission's 'policy of proximity' would not permit plaintiffs to have an S.D.D. license when there is one across the street. Plaintiffs were able to get a license for the sale of beer about April 10, 1952.

"The essence of plaintiffs' claim is well-stated in their brief:

" 'Plaintiffs, relying upon the express agreement that the liquor license was to remain on the premises, bring this suit to get their license back and for damages resulting from defendant's breach of the stipulation contained in both the lease and the bill of sale.'

"The defendant's position relating to the claim of the plaintiffs that the S.D.D. license 'must be maintained on above premises' (on plaintiff's premises) is as follows:     *     *     *

" 'That the provision contained in the bill of sale, and contained in the lease, specifically referred to by plaintiffs in their amended bill of complaint para-

graph 5, was inserted as security during the period the chattel mortgage was in existence and unpaid, and no longer, and that said clause was solely a protection to the plaintiffs while the defendants were indebted to them, and did not constitute a contract to reassign to the plaintiffs or retransfer to the plaintiffs any asset purchased from the plaintiffs for the consideration herein before recited.'

"The prime issue that must be resolved is: Did defendant remove the S.D.D. license from plaintiffs" premises contrary to the terms of their agreement, as set forth in the lease and bill of sale? The language over which the parties so violently disagree as to its intent and meaning is as follows:

"*From the lease.*

" 'It is further understood and agreed that whereas parties of the first part now have an S.D.D. liquor license and beer license in connection with the grocery store operated on said premises, said liquor license or any renewal thereof must be maintained on above premises and may be transferred only to lessor or party approved by lessor in event of further change of ownership of store business.'

"*From the bill of sale.*

" 'It is further understood and agreed that whereas parties of the first part now have an S.D.D. liquor license and beer license in connection with the grocery store operated on said premises, and said liquor license must be maintained on above premises and may be transferred only to lessor or party approved by lessor in event of further change of ownership of a store business. This applies to renewals.' "

The issues so outlined are presented by bill and cross bill. By their bill plaintiffs ask damages, principally consisting of alleged lost profits stemming from defendant's appropriation of the liquor license, in addition to a decree for restoration of the license. Defendant asks damages arising from his stated theory of the case and an alleged actionable eviction. The chancellor, following trial on pleadings and

proofs, filed an opinion ruling generally in favor of plaintiffs and, as to the cross bill, ruling that defendant (cross plaintiff) "is entitled to an injunction against cross defendants (plaintiffs) restraining them from using the name 'General Store' or 'Serbinoff's General Store' or destroying the good will sold, but not to damages." A decree was entered accordingly. Defendant appeals and submits the following questions for determination here:

"1. Should the trial court have permitted the defendant to introduce parol testimony to show the surrounding circumstances, the complete agreement of the parties, and to explain the written instrument, where:

"(a) The written instruments introduced show, obviously, on their face, that they are incomplete, lacking in detail and do not contain all of the terms of the contract between the parties;

"(b) The principal instrument relied upon was a so-called bill of sale which was not signed by the defendant;

"(c) The instruments introduced and relied upon do not show a deliberate regard for the many questions which would naturally arise out of the subject matter of the contract;

"(d) None of the instruments introduced (other than the final unconditional assignment of the S.D.D. liquor license) contained any obligation for sale and transfer of S.D.D. liquor license, the sale and transfer of which was one of the principal objectives of the parties of this transaction.

"2. Were vague and restrictive provisions against a subsequent removal or transfer of the liquor license by the defendant, contained in the bill of sale and the lease, merged in a subsequent absolute and unconditional transfer of such license to the defendant?

"3. Should the court grant specific performance of a negative covenant against removal or transfer of a liquor license, where the provision relative thereto was indefinite and incomplete as to terms and

conditions, lacking in essentials of performance, without mutual obligations, and where the plaintiff had committed a material breach of an instrument containing such provision.

"4. Should the plaintiff be decreed damages for loss of profits, the claim for which arises out of an alleged breach of contract, where the proofs are uncertain, indefinite and conjectural, and recite gross sales, without consideration of cost of sales?"

*First:* We cannot uphold, for reasons given in *Counihan* v. *Hayes,* 246 Mich 390; *Michiana Shores Estates, Inc.,* v. *Robbins,* 290 Mich 384; *Kerns* v. *Kerns,* 303 Mich 23; *Henning* v. *McEuen,* 332 Mich 104; and *Gilchrist* v. *Gilchrist,* 333 Mich 275, defendant's contention that the chancellor erred in refusing to admit oral testimony tending to show, as claimed, that the quoted portions of the lease and bill of sale were inserted for security purposes only. When the proof pointed up in defendant's stated question No 1 was rejected below, defendant made no request for permission to make a special record thereof. He did not even make a formal offer. In the absence of such eminently proper practice as reflected in the cited decisions, we are unable to appraise for evidentiary worth that which defendant says the chancellor refused to receive. As was said in *Kerns, supra* (p 32):

"To preserve the question of the admissibility of excluded testimony in chancery cases for proper review, correct practice requires that a special record of the offered testimony should be made."

This is no hard and fast rule, of course. Equity knows no inflexibility in the employment of her maxims. Nonetheless, and to incline our discretion toward remand for taking of additional testimony for consideration in an equity case, an unusually strong showing of need and diligence must be made.

We have none here. It follows that the chancellor's principal ruling—"that the language here quoted evidences an unmistakable intent and agreement between the parties that the S.D.D. license was to remain on the plaintiffs' premises and to be transferred back to the plaintiffs by the defendant under the circumstances here presented"—must be upheld. That ruling accords with the language the parties employed when they reduced their contractual purposes to writing and it accords with the surrounding circumstances showing intention of the parties that the license "must be maintained" on plaintiffs' premises.

*Second:* The remaining point of moment—that plaintiffs' proof of decreed lost profits is uncertain and speculative under rules given in *McKinnon* v. *McEwan,* 48 Mich 106 (42 Am Rep 458) ; and *Allis* v. *McLean,* 48 Mich 428—calls for scrutiny of the proofs in light of the opinion below.

The chancellor, having allowed plaintiffs' claim for hold-over rent in the total sum of $210, and having disallowed plaintiffs' damage claims based (a) on repairs to the floor of the store building following defendants' surrender thereof, and (b) on loss of sales of beer during the 3-month period preceding April 10, 1952, proceeded to analyze plaintiffs' 2 elements of claimed profit losses, headed respectively, "Loss of profit on liquor occasioned by plaintiffs being without an S.D.D. license" and "Loss of profit on grocery sales due to fact that plaintiffs were without S.D.D. license." The first of these 2 elements was allowed and assessed by the chancellor at the sum of $4,372. The second was disallowed for reasons of no present moment considering plaintiffs' failure to cross-appeal.

Our attention, then, is confined to proof and argument directed toward loss of profit on liquor sales, as claimed by plaintiffs, during the extended period defendant excluded plaintiffs from use of the liquor.

license on their premises. The chancellor, having painstakingly assembled and analyzed the proofs relating to past sales records, reasoned his above-noted assessment of damages this way:

"Plaintiffs' average percentage of liquor sales to total grocery and beer sales for the years 1944, 1945 and 1946 was 44%. Defendant's average percentage of liquor sales to total grocery and beer sales for 1952 and 1953 was 25%. Using the percentage of 25% which the testimony showed to be fair, and multiplying by the *actual total sales* of groceries and beer of plaintiffs in 1952 and 1953 of $174,901.04 we arrive at a figure of $43,725. This figure of $43,725 is a conservative and realistic minimum sales value of the liquor that plaintiffs would have sold in 1952 and 1953 had they had the S.D.D. license. The profit on liquor is 10%. Plaintiffs therefore lost on liquor sales during the years 1952 and 1953 as a result of being deprived of their S.D.D. license, 10% of $43,725 or $4,372 for which plaintiffs may have a decree for money judgment. If the plaintiffs had had the S.D.D. license in 1952 and 1953 their total sales of groceries and beer would have been larger or in excess of the *actual sales* of $174,901.04 but this figure is used in order to be conservative and because the true figure cannot be ascertained with any reasonable degree of certainty."

We find, on examination of the record and authorities cited to us by defendant,[*] no ground on which it may be said that the quoted assessment of damages offends our rules relating to recovery of lost profits occasioned by breach of contract. As was said in

---

[*] *McKinnon* v. *McEwan, supra*; *Allis* v. *McLean, supra*; and *Rich* v. *Daily Creamery Co.*, 303 Mich 344. Defendant relies particularly on the general rule stated in 25 CJS, Damages, § 42 (b), page 518, as follows:

"Loss of profits from the destruction or interruption of an established business may be recovered, if the amount thereof is reasonably certain; but this rule can have no application in the case of a new or illegal business."

*Industrial Works* v. *Mitchell,* 114 Mich 29, 34, there is nothing in the term "profits" which has such terror to the courts as to prevent measuring a party's loss by proof showing the amount. Plaintiffs' loss in such regard must have been "in contemplation" of defendant when he moved across the street and set up business under the banner of plaintiffs' liquor license, it being evident that possession and use of the license meant brisk business on one side of the street and loss thereof on the other. This is sufficient to sustain the chancellor's quoted ruling as against defendant's stated contention.

No other point requires discussion. The decree below accomplishes an equitable result of a difficult and involved case. It is therefore affirmed, with costs to plaintiffs.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, VOELKER, KELLY, and CARR, JJ., concurred.