RYAN v. ALEXY.

RELEASE—MUTUAL MISTAKE—EVIDENCE—LIABILITY FOR NEGLIGENCE.
Decree setting aside, on ground of mutual mistake, release which
had been given for a consideration of $1,400 in connection with
settlement of damage claim resulting from automobile collision
is affirmed by KAVANAGH, C. J., and BLACK, J., because there
was sufficient proof to justify decree entered, and by SOURIS
and SMITH, JJ., on ground that defendants' claim on appeal
that evidence of liability had been erroneously excluded had not
been pleaded.

DETHMERS, KELLY, and O'HARA, JJ., dissenting.

Appeal from Wayne; Baum (Victor J.), J. Submitted December 4, 1963. (Calendar No. 118, Docket No. 49,965.) Decided May 4, 1964.

Bill by Lawrence Ryan against Arthur Alexy and State Farm Mutual Automobile Insurance Company, a corporation, to reform a release given in connection with settlement of damage claim resulting from automobile collision. Decree for plaintiff. Defendants appeal. Affirmed.

*Kelman, Loria, Downing & Craig (George L. Downing,* of counsel), for plaintiff.

*Eggenberger, Eggenberger & Ashton,* for defendants.

O'HARA, J. (*dissenting*). This case raises again the question of the legal efficacy of a release for per-

REFERENCES FOR POINTS IN HEADNOTE
45 Am Jur, Release § 20.

sonal injuries sustained in an automobile collision. The release involved is the usual insurance company form which attempts, within the limits of language, to constitute itself full and final for all injuries "known and unknown." A chancery action was brought to set it aside on the ground of mutual mistake. A decree of partial reformation was granted. Defendants appeal.

Perhaps some of the difficulty in this field arises from the language in *Denton* v. *Utley*, 350 Mich 332, 339, 340, wherein former Justice TALBOT SMITH says:

"If one of the contracting parties believes a material fact to exist, and it does not, he is mistaken. The other party (if the fact is truly material) either labors under the same misapprehension, in which case there is mutual mistake, or he knows better, in which case there is fraud."

Read alone and out of context in juxtaposition with a release for all injuries "known or unknown," it is apparent that insurance companies in attempting final settlements in good faith for a bona fide consideration where the nature and extent of the injury is not known with certainty might better save their release-breath to cool their soup, for it would be impossible to execute an instrument which would in fact extinguish their liability.

Reading *Denton* carefully, and particularly the quoted language, should at once reassure and warn both claimants and insurers that a full and final release is possible, even where the extent of the injury is not and cannot be completely known to either party or both.

At page 344, Justice TALBOT SMITH opines:

"We would not be understood as holding (and here is exactly where many difficulties arise) that it is not within one's competence to say 'I may have

serious injuries I know nothing about. As to them I will take my chances.' "

Whether or not one has done so, says former Justice Talbot Smith, is a question of fact. He quotes in support of this postulate from 5 Williston, Contracts (Rev ed), § 1551:

" 'Where a release is given by one injured in an accident and more serious injuries develop than were supposed to exist at the time of the settlement, it is a question of fact whether the parties assumed as a basis of the release the known injuries, or whether the intent was to make a compromise for whatever injuries from the accident might exist whether known or not.' "

Query then, was it this plaintiff's intention to "make a compromise for *whatever* injuries from the accident might exist whether known or not?" That is, was it the intention of this plaintiff, in the words of the release to compromise all injuries, "known or unknown?" To determine this, *all* of the facts and circumstances surrounding the execution of the instrument must necessarily have been made known to the finder of facts—in this case the chancellor. He made an extremely detailed finding of fact in his opinion and supplemented it with a liberal citation of authority from this jurisdiction and others. We acknowledge it gratefully.

However, as to 1 highly relevant circumstance attending the execution of the release here involved, the trial judge was not informed and would permit no testimony to be adduced concerning it.

Plaintiff in his bill of complaint, count 1, paragraph 17, alleges:

"That plaintiff has commenced an action at law to recover for all property damage and personal injuries received as a result of *defendant Alexy's negligence.*"

In response thereto defendant answered:

"Answering paragraph 17, *defendant Alexy denies he was negligent in any way,* but admits the remaining allegations."

The pleadings therefore place the negligence, if any, in issue. The trial court ruled, however, that no evidence upon that issue was admissible:

"*The Court:* Mr. Eggenberger [defense counsel], do you care to make an opening statement at this time?

"*Mr. Eggenberger:* Just briefly, your Honor. To begin with, this is a very questionable case of liability.

"*The Court:* Does that have anything at all to do with the issue before me?

"*Mr. Eggenberger:* I think it does insofar as it would affect the valuation of the claim by the company. * * *

"*The Court* (to Mr. Eggenberger): I'm not going to let evidence of that kind in. *We're going to confine ourselves to issues raised by plaintiff's theory.* I suppose it would be for the plaintiff to establish a mutual mistake of fact or mistake of fact on 1 side and concealment of fact on the other, which he claims amounts legally to a fraud.

"I don't think the circumstances under which the accident occurred have anything to do with the pertinent [pending?] case."

In this holding we believe the able chancellor was in error. Whatever purity of legal issue may exist in the equitable doctrine of reformation of instruments for fraud or mistake generally, it is an inescapable fact of automobile negligence life, that liability is a most significant factor in claim evaluation and hence the bona fides of the parties and the adequacy of consideration. It is fundamental that a faultless passenger to whom his driver's negligence is not imputable has an infinitely more valu-

able claim in settlement value than a driver similarly injured, but to whom his own negligence is chargeable. A driver, stopped for a traffic light against him and struck from the rear, has much greater negotiating force for settlement than his counterpart driver who collides with another at an open intersection. The point is not that the same consideration represents fair compensation for injury received in one case or the other. The point is that the intention of the parties at the time of a settlement implicitly reflects the factor of legal liability.

Appellee urges that testimony on the issue of liability was inadmissible and irrelevant because "at the time that this release was signed there is no claim that the sum was inadequate. I am claiming that there was a mistake and as a result of this mistake the sum *appears to be inadequate.*" Superseding this precise issue is the question of the total atmosphere in which the settlement was negotiated. When the following interchange among counsel, witness and the court took place, defendant was effectively barred from any testimony relating thereto:

"After receiving the file, I received a 'phone call from either Mr. or Mrs. Ryan asking me what I was going to do about the claim. * * *

"*Q.* Again, did you investigate this accident and it was assigned to you?

"*A.* Yes, I did.

"*Q.* Now, can you tell the court whether or not, after you concluded your investigation, you formed an opinion as to whether or not this was a case of liability? Just answer that question 'Yes' or 'No'. * * *

"*The Court:* Hold this for just a moment. (To witness): Hold your answer. * * *

"*Mr. Downing:* I'll object to it, your Honor.

"*The Court* (to Mr. Downing): On the ground of relevance?

"*Mr. Downing:* Yes, on the ground of relevance and also on the ground that there is no basis that has been established for such an opinion. My main objection is on the ground of relevance. But if the court should feel that this matter is relevant, then I say that there has been no sufficient basis laid for this opinion.

"*The Court* (to Mr. Downing): Are you claiming that the consideration paid was inadequate? Is that still 1 of your claims? If that is 1 of your claims, then it would appear that the matter of liability would enter into that because whether or not there was liability would be a factor in determining whether consideration was adequate. However, if there isn't any—

"*Mr. Downing* (interposing): My position is this: On the basis of the facts known to the parties at the time that this release was signed, there is no claim that the sum was inadequate. I am claiming that there was a mistake and as a result of this mistake, the sum appears to be inadequate. But of the facts as we know them now and as they are known to the parties, I am not claiming inadequacy.

"*The Court:* I am going to sustain the objection on the ground of relevance."

We are convinced from the testimony that the chancellor was well within the range of the testimony when he found as a matter of fact:

(a) "Therefore, there was a mutual mistake of fact regarding the plaintiff's physical condition when the release was signed by him."

(b) "There is no question but what this release was freely and voluntarily given in the sense that no duress was employed."

Nonetheless a finding of mutual mistake as to the releasor and releasee and a finding of the absence of fraud as to the releasee do not alone answer the

earlier question mentioned in *Denton,* and which to us requires answer here.

Did plaintiff say in legal effect: I have injuries the nature and extent of which I do not know with certainty, but as to them I will take my chances for the consideration you offer, in view of all the circumstances surrounding my injury including your (defendant's) liability therefor, if any?

*Per contra,* did defendant say, in legal effect: I am not liable legally for any of your injury or damages, whatever they may be, known or not, but I will buy my peace and bar future action against me for this consideration?

Under *Denton, supra,* such an agreement could be legally made, and so made could become legally binding.

We cannot, nor do we believe, could the able chancellor determine this essential question of fact unless and until the degree to which the question of the extent of the legal liability of the party paying was in the minds of both parties at the time of the execution of the release. This we believe was the reason the appellate court of Illinois in the cited case of *Thomas* v. *Hollowell,* 20 Ill App 2d 288, 291 (155 NE2d 827), was moved to say under a somewhat similar set of facts:

"It has always been the policy of the law to favor compromise and settlement, and it is especially important to sustain that principle in this age of voluminous litigation, particularly in traffic cases. It must be remembered that the question of liability, besides the extent of the injuries, may well be in the minds of the parties."

We are reluctant to add to the onerous caseload of an already overburdened docket (to say nothing of the possibility of adding to our own, similarly burdened) by remanding for a new hearing. Such,

however, is our decision and it should be so ordered in light of our holding here. Appellants should tax costs.

DETHMERS and KELLY, JJ., concurred with O'HARA, J.

BLACK, J. Granting freely that defendants' allegation of doubtful or nonexistent liability would be, had it been supported by due proof, an element the chancellor should have taken into decisional consideration,* we find as in too many previous equity cases that these defendants have failed to record and bring here any proof, on strength of which this Court might fairly conclude that their said allegation calls for a decree upholding rather than vacating the release tested below.

Defendants could have made a record, upon due request, of whatever proof of doubtful or nonexistent liability as was available to them, and of the discussion of such factor if any when the presently mentioned Mr. Bogus interviewed plaintiff in the latter's home and obtained the release, yet they did not do so. Defendants did not even make a formal offer of such proof, which course was open to them under the rule of *Bujalski* v. *Metzler Motor Sales Co.,* 353 Mich 493.

"The trouble with defendant's complaint under this heading is that he has not brought here, and did not ask the chancellor's aid in bringing here, that comprehensive record of defendant's testimony which might enable us to ascertain its value as well as competence. See *Counihan* v. *Hayes,* 246 Mich 390; *Kerns* v. *Kerns,* 303 Mich 23; *Serbinoff* v. *Du-*

* For authority to the point, see note § 15, starting at 167, of annotation "Avoidance of release of personal injury claims on ground of fraud or mistake as to the extent or nature of injuries," 71 ALR2d 82; also our recent opinion of *Hall* v. *Strom Construction Co.,* 368 Mich 253, 255, 261.

*kas,* 348 Mich 69; *Bujalski* v. *Metzler Motor Sales Co.,* 353 Mich 493; and *Lazerow* v. *Lazerow,* 362 Mich 27." (*Cyranoski* v. *Keenan,* 363 Mich 288 at 292.)

The statute authorizing such long-standing practice (CL 1948, § 617.5 [Stat Ann § 27.853]) has been retained by the Revised Judicature Act [No 236] of 1961. See CLS 1961, § 600.2101 (Stat Ann 1962 Rev § 27A.2101). The result is that our previous decisions, cited in *Kent* v. *Bell,* 368 Mich 443 at 451, stand as before to the end that equity cases should be so tried that, if appealed, they may arrive in this Court for final disposition on a complete and comprehensive record. This case does not so arrive. Neither does it disclose that "strong showing of need and diligence" which is essential to remand. To that point, see *Serbinoff* v. *Dukas* (cited in *Cyranoski* above), 348 Mich 69 at 74, 75.

As the record stands the only proof with respect to the question of liability appears in a statement written partly by plaintiff's wife and partly by the defendant insurer's then present claim superintendent, Mr. Bogus. The statement was written up in plaintiff's home and was signed there by plaintiff. It was offered in evidence by defendants, and was received accordingly, after defendants' counsel had drawn out from plaintiff, upon cross-examination, the verity thereof. It reads, without record dispute, as follows:

"On December 23, 1959, at about 11:30 p.m. I was involved in an accident on Schoenherr Rd at Tacoma in Detroit, Michigan. The accident happened when a car driven by Arthur Alexy cut my car off of Schoenherr Rd & forced me into a telephone pole on the west side of Schoenherr Rd. At the time of the accident I was traveling south on Schoenherr Rd at about 25 m.p.h. when Mr. Alexy who had been stopped on west bound Tacoma pulled out in

front of me. I was about 40 feet from the intersection in question when Mr. Alexy pulled in front of me. I cut to the right to miss Mr. Alexy's car and hit the telephone pole. There was nothing I could do to avoid the accident. I could not stop because of the wet & slippery pavement as it had been snowing out."

Since all members of the Court are agreed that, under rules appearing in *Hall* v. *Strom, supra,* there was in all other respects amply sufficient proof to justify Judge Baum's decree, we conclude that our *de novo* disposition should be that of affirmance rather than remand. On the record made below the defendant motorist was "liable," at least for the purpose of testing validity of the release. Said section 617.5 considered, it is quite unnecessary to add, in the phrasing of Justice O'HARA, "to the onerous caseload of an already overburdened docket" by an order of remand "for a new hearing." And it is hardly necessary that any court hear the not exactly disinterested Mr. Bogus opine that "this was not a case of liability." Mr. Bogus just "wasn't there." His opinion in such regard would have no more evidentiary value than that of any claim manager seeking thus to testify, for the defendant, in a common-law action for negligence.

We would affirm, with costs to plaintiff.

KAVANAGH, C. J., concurred with BLACK, J.

SOURIS, J. (*concurring in affirmance*). I concur in affirmance. Judge Baum did not err in ruling that evidence of liability was irrelevant to the pleaded issues to be tried. Plaintiff's theory, which was met squarely by defendants' general denial, was that both parties to the challenged release made a mistake of material fact. The material fact referred to was the nature and extent of the plaintiff's in-

juries, not the certainty or uncertainty of defendants' liability therefor.

Had the defendants pleaded, and sought to prove, that they settled with plaintiff simply to avoid further controversy and not as a compromise of the plaintiff's injuries, in which event any mistake as to the nature and extent of the plaintiff's injuries would be immaterial, then, certainly, evidence of liability would be admissible. See cases cited in section 15 of the annotation relied upon by Mr. Justice Black, "Avoidance of release of personal injury claims on ground of fraud or mistake as to the extent or nature of injuries", 71 ALR2d 82. But that is not this case. Here, defendants at no time, not even at trial when they unsuccessfully attempted to introduce evidence of negligence, claimed that they entered into the release agreement (whereby they paid $1,400) just to avoid further controversy or to settle a nuisance claim and that the nature and extent of plaintiff's injuries were of no importance to them in making the settlement. Instead, defendants pleaded and proceeded to trial on the theory that there was no mistake with reference to plaintiff's injuries such as to justify the chancellor in granting the rescission or reformation relief plaintiff prayed. Under the circumstances of this case, evidence of liability would have been irrelevant and for that reason was properly excluded.

I would affirm Judge Baum and award costs to plaintiff.

Smith, J., concurred with Souris, J.

Adams, J., took no part in the decision of this case.