## WARE v. GEISMAR.

1. RELEASE—VALIDITY.

A release of a tort-feasor by the one he has injured, to be sustained, must be fairly and knowingly made.

2. SAME—NOMINAL CONSIDERATION—DELAYED SYMPTOMS OF INJURY.

Relief is available to one who has released a tort-feasor when he is able to plead and prove that the injury to which the symptoms of delayed disease or disability is probably attributable was mutually unknown when the release he would avoid was signed as distinguished from a then want of knowledge of unexpected adverse consequences of a known yet apparently negligible injury.

3. SAME—MUTUAL MISTAKE—SUBSEQUENTLY DEVELOPING HEART AILMENT—CONSIDERATION.

Release, obtained from husband and wife 6 days after automobile accident in consideration of payment of $600 which was allegedly represented to plaintiffs as settlement for the value of their car only, *held*, properly set aside by trial court, where defendant claimed that $575 of the money represented payment for plaintiff's automobile and $25 represented payment for possible personal injuries, it was known by both parties that plaintiff had received minor bumps to his back and head at the time of the accident, but not known that he sustained any other injuries, and shortly thereafter injured plaintiff suffered a heart ailment allegedly attributable to the accident, which ailment eventually became disabling, since the evidence amply supported the trial court's finding that the releases executed had not been fairly and knowingly made, there having been a mutual mistake entitling plaintiffs to relief, particularly where release was executed by plaintiff wife without any consideration running to her and without anyone having informed her concerning its meaning.

REFERENCES FOR POINTS IN HEADNOTES

[1] 45 Am Jur, Release § 17 *et seq.*
[2, 3] 45 Am Jur, Release § 20.
Avoidance of release of personal injury claims on ground of fraud or mistake as to the extent or nature of injuries. 71 ALR2d 82.

Appeal from Houghton; Brennan (Leo J.), J. Submitted Division 3 May 10, 1967, at Marquette. (Docket Nos. 2,043, 2,044.) Decided December 1, 1967.

Complaint by Alfred P. Ware against Leona Marie Geismar for damages as the result of personal injuries sustained in an automobile accident. Derivative complaint by Geneva P. Ware seeking damages for loss of consortium and compensation for services required of her as the result of the injuries to her husband. Defendant claimed that both causes of action were barred by prior release. Separate hearing resulted in judgment finding releases invalid. Defendant appeals. Affirmed.

*Messner & LaBine,* for plaintiffs.

*Humphrey & Weis,* for defendant.

HOLBROOK, J. Plaintiff Alfred P. Ware commenced a suit for damages against Leona Marie Geismar for personal injuries suffered in an automobile accident, October 19, 1962, for permanent disability, pain and suffering, loss of earnings, and hospital and medical expenses. Mrs. Geneva P. Ware, wife, commenced a separate suit against defendant seeking damages for invasion and loss of consortium, and for the extraordinary, unusual and difficult services required of her rendered in the past to her husband and which she will be required to render in the future, all claimed to be caused by the negligence of defendant in injuring her husband in the automobile accident.

Defendant made answer to the 2 complaints and asserted in each the affirmative defense that both plaintiffs had on or about October 25, 1962, executed

and delivered to defendant or her agents, a release of the claims and causes of action set forth in plaintiffs' complaint, and that the release bars the actions. Plaintiffs filed replies claiming that the purported releases were not knowingly signed by them, and if signed, were signed for the purpose of settling the damage to the automobile only. Within minutes after receiving the check given to them for the settlement, they learned that on the back of the check appeared a release purporting to include all claims for personal injuries past and future. They then decided not to cash the check but to have it returned to defendant's agents. Defendant refused to accept the check when tendered and returned it to plaintiffs.

Pursuant to an agreement of counsel, the court ordered the issue of the validity of the release to be tried separately by the court, without a jury. Proofs were taken and the trial judge in a thorough written opinion determined the release was not valid. Judgment was entered in accord therewith and defendant has taken this appeal.

A single question is presented for review: *"Was the release, under the circumstances of this case, a valid release barring plaintiffs' recovery for the claimed respective injuries that developed subsequent to the time of the release?"*

The pertinent facts appear to be as follows: Plaintiff Alfred P. Ware, 65 at the time of the accident, was a registered pharmacist, having qualified in 1916, after attending pharmacy school. He had owned and operated pharmacies for many years. At the time, he was operating a pharmacy at Calumet, Michigan. Mrs. Ware had an eighth grade education. She had taken a commercial course and was secretary for a land company.

The plaintiffs' automobile involved in the accident was a 1956 Ford V8, purchased new by plaintiffs in 1956. The night of October 18, 1962, Mr. Ware left

his store shortly after 8 p.m. and was driving south on highway US 41 en route to his home. While driving on his own side of the road and traveling at 15 miles per hour, he was involved in an accident with another automobile driven by defendant. From the force of the impact, Mr. Ware was thrown to the opposite side of his car with great force, bumped his back and head, and was rendered momentarily unconscious. His car was totally demolished and he was required to rent a substitute vehicle to commute to work. Defendant admitted that the accident was her fault.

Mrs. Ware testified that when her husband came home that night after the accident, she knew something was wrong and "the minute I spoke to him, he started to cry and he was shaking like a leaf." Mr. Ware stated that the next morning at work, he "got sort of a weak spell or I wasn't feeling right." He then went up to Dr. Meier's office above his drugstore. Dr. Meier, an orthopedic physician and surgeon, felt his pulse, made a stethoscopic examination, gave him some tranquilizers and told him to take it easy. He was not advised to go to a hospital nor did he consult his own family physician. He continued to work on successive days, but he appeared at times to be in a daze and his work habits became irregular. Plaintiff was not aware that he suffered any serious disabling injuries.

Robert Antonino, an adjuster for the State Farm Mutual Insurance Company, the insurer for defendant's vehicle, conducted an investigation of the accident including making an inspection of plaintiffs' automobile. From his investigation, he determined that defendant had gone over on plaintiff's side of the road and struck plaintiffs' car, and to repair plaintiffs' car would cost more than the value of the automobile. Thereafter, he contacted Mr. Ware at the drugstore in the forenoon of October 23, 1962,

and talked with him for 10 to 15 minutes. The adjuster's version of what occurred at that meeting was to the following effect: he offered Mr. Ware $600 settlement on all claims. Mr. Ware thought he should have $1,200. The adjuster said this was too much and could not be paid. He told Mr. Ware he had determined the book value of the automobile to be $480, however, because of the good condition of the vehicle, he inquired of values for comparable cars in the area and determined the vehicle had a high value of $575. He would therefore pay a total of $600 for all claims. Mr. Ware stated he had bumped his back and head in the accident and that Dr. Meier had examined him. Mr. Ware in talking about the accident, minimized his injuries.

Mr. Ware stated what took place at this occasion was as follows: he was very busy answering the telephone and filling prescriptions. The adjuster introduced himself as representing the insurance company that underwrote the liability on Mrs. Geismar's automobile. The adjuster said he had seen the wreck and he realized the car had been in good condition prior to the accident and was worth more to Mr. Ware than the blue-book value. He said the blue-book value was $425, but he would pay $600 seeing that it was in good condition. To this Mr. Ware said he would think it over. The next day, Mr. Ware testified that the adjuster called him and said "if you want to settle for $600 for your car, you can go to the office in Houghton."

The adjuster disagreed with Mr. Ware's statement that he had called Mr. Ware, and asserted that Mr. Ware called him and said he would settle for the $600 and thereupon he was told he and his wife would have to go to the office at Houghton and sign the releases and a check would be there for him. The adjuster informed Mr. Ware he was going out of town and would not be present.

Mr. Ware was interested in getting another automobile so he could commute to work. On October 25, 1962, Mr. and Mrs. Ware went to the defendant's office at Houghton. Their account of what happened was that they had just signed the title of the car over and had received a check for $600 for it. They denied signing any release. At no time did Mr. Antonino or anyone else acting for the insurer contact Mrs. Ware and explain what she was supposed to release in order for the $600 to be paid.

Both Mr. and Mrs. Ware testified that they did not recall signing a release and did not read the one on which their names appear.

Mr. Ware continued to suffer pain, had an ache in his chest and in his arms, and on December 30, 1962, suffered a heart attack which he attributes to the trauma received in the accident. He was hospitalized for 17 days. On two other occasions thereafter he was hospitalized. Considerable money was spent for medicines and his wife was giving him constant attention as needed. He was unable to work, being completely disabled.

Mr. Ware claims the insurance adjuster did not specifically inquire concerning the extent of his injuries. At the time of the conversation at the drugstore, Mr. Ware asserts that he did not know his heart had been damaged by the accident and therefore he was unable to inform defendant's insurer of this injury. He did not learn of the injury to his heart until after October 25, 1962. Mr. Antonino does not claim he was paying for any injury to Mr. Ware's heart in the release which he claims represents a valid settlement.

Under defendant's claims the sum of $25 was the amount being paid for superficial bodily injuries including pain and suffering, loss of earnings, medical expenses, and loss of use of the automobile—all of

which the adjuster was informed could be present in Mr. Ware's case.

Mr. and Mrs. Ware asserted that the settlement was for the car alone—that the figure of $600 was agreed upon as the value of the automobile.

Issues of fact were presented to the trial judge for determination. In the trial judge's written opinion, it is stated in part as follows:

"Alfred P. Ware suffered two heart attacks and was hospitalized on three different occasions, to-wit: December 31, 1962, March 8, 1963, and October 24, 1963, and he has incurred hospital and medical expense of $2,500 up to the beginning of 1965.

"Dr. A. B. Aldrich was the attending physician of Alfred P. Ware and advised that there could be a causal relationship between the trauma and the acute coronary occlusion, because the shock and nervous reaction of the accident could have a lasting effect, might affect the vascular system, and that the acute heart spasms could be the natural result of the coronary occlusion.

"The proofs introduced predominate in favor of the plaintiffs. This law question is involved: Was the instrument purporting to be a release fairly and knowingly made for an adequate consideration so as to bar the plaintiffs' recovery for their injuries and losses?

"The court reaches the conclusion, after fully considering the proofs and positions of the parties, that the case of *Denton* v. *Utley* (1957), 350 Mich 332, is controlling, along with the numerous precedents therein contained."

In *Denton* v. *Utley, supra,* on pp 339, 340, 342, Mr. Justice TALBOT SMITH stated in part as follows:

"A part of this broad expanse of the law of mistake particularly concerns us here, relief from that instrument known as a release. It is a commonplace that relief is given upon a proper showing of fraud

or mistake, as later cases well illustrate. But as to when, and why, and under what circumstances, the cases abound in distinctions both subtle and complex. It is said, for instance, that we must distinguish between mistake of a material past or present fact, and the mistake 'of prophecy or opinion' concerning the future. The existence of the former, it is said, will justify rescission (or cancellation, or avoidance, or vacating) but not of the latter. Yet we may well ask, as a practical matter (as distinguished from a verbal technique), is it possible to completely divorce diagnosis from prognosis? Is there not an interrelation, even if not an interdependence? Is not a doctor's opinion as to prospects of recovery a representation as to an existing factual situation upon which all parties should be entitled to rely? See *Granger* v. *Chicago, Milwaukee & St. Paul R. Co.*, 194 Wis 51 (215 NW 576). Thus it is that we find Judge Bratton, in *Tulsa City Lines, Inc.*, v. *Mains* (CA10, 1939), 107 F2d 377, 381 saying: 'In cases of this kind it is sometimes difficult, if not impossible, to draw a distinct line of separation between mistakes relating to present and future facts.' Another common distinction urged is that between the unilateral mistake, so-called, and the mutual mistake. There is, of course, a difference. But from this should we automatically conclude that one presents a proper case for relief, the other not? It does not so follow. If one of the contracting parties believes a material fact to exist, and it does not, he is mistaken. The other party (if the fact is truly material) either labors under the same misapprehension, in which case there is mutual mistake, or he knows better, in which case there is fraud. Either case appeals to our jurisdiction. * * *

"In the particular case before us, involving a release, we confront merely a specialized application of the overriding principle that in its accomplishment of its mission, equity will strike down without hesitation any agreement resulting from oppression, fraud, mutual mistake of the contracting parties, or

other evil. The cases rest upon this great principle, not upon the minutiae urged. It matters not how sweeping are the words involved. When their content cloaks iniquity they shall be vacated and held for naught. To put it affirmatively, any release, to be sustained, must be 'fairly and knowingly' made. (*Farrington* v. *Harlem Savings Bank,* 280 NY 1 [19 NE2d 657]; Keefe, Validity of Releases Executed under Mistake of Fact [1945], 14 Fordham L Rev 135.)"

The case of *Hall* v. *Strom Construction Company* (1962), 368 Mich 253, involved a release which was obtained 27 days after the accident upon payment of $425 for injuries suffered by plaintiff when struck on the head by a falling portion of a cement block. The blow ultimately caused epilepsy. The Court affirmed the lower court's decree setting aside the release. The application of *Denton* v. *Utley, supra,* is well explained in the opinion written by Mr. Justice BLACK wherein he states on pp 257, 258 as follows:

"Stressed is the fact, a fact we find undisputed upon *de novo* and wholly independent consideration of this equity case, that plaintiffs at release time were without knowledge that Mr. Hall had suffered, distinct from the superficial blow on the back of his head, any kind of a brain injury. By preponderant proof it was shown that they did not even know, as defendants did, that Mr. Hall's medical record at the hospital noted 'brain concussion and back strain.' They and the insurer were concerned more with the trivial—as it turned out—back injury. All looked upon the head blow as something of but temporary annoyance. Such was the manifest conclusion of plaintiffs' doctor, of the adjuster, and of the defendant insurer's claim office, to which office a copy of the medical record had been sent. Thus a finding of outright want of knowledge, on the part of the defendant insurer as well as plaintiffs, that Mr.

Hall's brain was damaged at the time by the blow to the head, is fully justified. Such specific finding brings into play the line of authorities found commencing on page 100 of the above annotation, [71 ALR2d 82], subheaded 'requirement of mistake as to existing fact.' The essence of such authorities is that relief is available to the releasor when he is able to plead and prove that the *injury*—to which the symptoms of delayed disease or disability are provably attributable—was mutually unknown when the release he would avoid was signed in return for a nominal consideration. Such a case is *Clancy* v. *Pacenti* [15 Ill App 2d 171 (145 NE2d 802, 71 ALR 2d 77)], *supra,* where the fact of traumatic herniation of 2 lumbar discs was found mutually unknown at the time of release.

"To make the rule pinpoint plain, we construe it as applicable where the releasor's proof persuasively shows a fair and mutual want of knowledge of a hidden injury which eventually comes to consequential light, distinguished from a then want of knowledge of unexpected adverse consequences of a known yet apparently negligible injury. Here, by all fair intendment, Mr. Hall and the adjuster knew that Mr. Hall had been struck injuriously on the head and back. They did not know of the simultaneous internal injury, that is, the brain injury which upon present assumption was serious enough to cause the epileptic seizures Mr. Hall experienced later. The rule therefore applies." Also, see *Ryan* v. *Alexy* (1964), 373 Mich 50.

We believe that the facts in the instant case are analogous to both the *Denton* and *Hall Cases, supra.* Accepting the testimony in the light most favorable to defendant, the conclusion is inescapable that both plaintiffs and the defendant lacked knowledge of a hidden injury which eventually came to consequential light. Herein, Mr. Ware and the adjuster knew that Mr. Ware had been struck on the head and

back. They did not know of the simultaneous internal injury, that is, the heart injury which was serious enough to subsequently cause a heart attack which Mr. Ware experienced.

Also, under the facts in this case, the trial judge properly could, as he did, find that the release was not a valid release because it was not fairly and knowingly made. Mrs. Ware was never informed concerning the release or its meaning. Mr. Ware thought he was signing something to convey title to the automobile as did Mrs. Ware. There is no showing under the evidence that Mrs. Ware received any adequate consideration for the signing of the purported release.

Defendant cites cases from other jurisdictions in support of her position that the release should be upheld. A review of these cases is not necessary in view of the settled Michigan law on the subject as cited herein.

We conclude that the action of the trial court in setting aside the release was proper.

Affirmed. Costs to appellees.

FITZGERALD, P. J., and BURNS, J., concurred.