## CHUBY v GENERAL MOTORS CORPORATION

1. RELEASE—ALL-INCLUSIVE LANGUAGE—APPLICABILITY—FAIRLY AND
   KNOWINGLY—SUBSEQUENT CASE LAW.

   Releases from tort liability which are couched in all-inclusive
   language may nevertheless be inapplicable to a cause of action
   for loss of society and companionship where they could not
   have been fairly and knowingly made because that cause of
   action was believed not to exist at the time of the releases but
   was retroactively recognized by subsequent case law.

2. RELEASE—MISTAKE—CONSIDERATION—FAIRLY AND KNOWINGLY—
   MULTIPLE DEFENDANTS.

   Releases from tort liability may not have been "fairly and know-
   ingly" made where they were executed under the mistaken
   assumption that a decedent had experienced no pain and
   suffering and where they purported to release one of several
   defendants who apparently had contributed nothing to the
   settlement.

3. EQUITY—REFORMATION OF CONTRACTS—ARTIFICE AND WILE—FALLI-
   BILITY—MISTAKE—RELIEF.

   Courts of equity are empowered to relieve contracting parties of
   the consequences of an agreement resulting from artifice and
   wile if they have been deluded and betrayed even by their own
   fallibility; if fraud or mutual mistake has induced the making
   of an unconscionable contract, courts ought to be more con-
   cerned about granting relief than desirous of clinching future
   wrongs by making such contracts incontestable.

REFERENCES FOR POINTS IN HEADNOTES

[1] 20 Am Jur 2d, Courts § 233.

[2] 66 Am Jur 2d, Release §§ 13, 37, 44.
   Release of one joint tortfeasor as discharging liability of others:
   modern trends. 73 ALR2d 403.

[3, 4] 22 Am Jur 2d, Death §§ 254, 255.
   66 Am Jur 2d, Reformation of Instruments §§ 12 *et seq.,* 33.
   66 Am Jur 2d, Release §§ 55, 56.

4. COURTS—PROBATE COURTS—RESPONSIBILITIES—SETTLEMENTS—
   WRONGFUL DEATHS—ASCERTAINING FACTS—STATUTES.

   A probate judge who is petitioned in writing by an executor or
   administrator asking leave to settle a claim for damages for
   wrongful death has the authority and the responsibility to
   ascertain the facts before approving or rejecting such a settle-
   ment (MCLA 702.114; MSA 27.3178[184]).

Appeal from Wayne, Richard M. Maher, J. Sub-
mitted April 14, 1976, at Detroit. (Docket No.
21896.) Decided June 24, 1976.

Complaint by Helen Chuby, administratrix of
the estate of Joseph G. Chuby, deceased, against
General Motors Corporation seeking damages for
wrongful death resulting from an automobile colli-
sion. Motion for accelerated judgment by defend-
ant. Motion for reformation of a release agreement
by plaintiff. Plaintiff's motion denied. Accelerated
judgment for defendant. Plaintiff appeals. Re-
versed and remanded.

*George A. Jones,* for plaintiff.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by
*Donald E. Shely* and *James P. Feeney),* for defend-
ant.

Before: D. E. HOLBROOK, P. J., and BRONSON and
D. C. RILEY, JJ.

D. E. HOLBROOK, P. J. Plaintiff appeals from an
order of the court below which denied plaintiff's
motion for reformation of a release and granted
defendant's motion for accelerated judgment of
dismissal.

Plaintiff, as administratrix of the estate of her
son, brought an action in circuit court to recover
damages arising out of the accident which caused
his death. As a defense, defendants argued that all

claims of plaintiff, both individually and as the representative of the estate of her deceased son, had been released by plaintiff in two releases signed January 21, 1972. The release which plaintiff executed in her capacity as administratrix was authorized by the Wayne County Probate Court.[1] The petition for that authorization states that decedent's death was instantaneous, and that there was no pain or suffering involved. Apparently, however, plaintiff's 17-year-old son was in fact burned to death when the gas tank in the Corvair automobile in which he was a passenger exploded. The two releases which defendant General Motors sets up as a defense were signed for

[1] An examination of the record below reveals that a petition for authority to settle a contingent liability claim and pay attorney's fees was filed in the probate court for the County of Wayne. This petition stated that the decedent had been killed in an automobile accident, that he had suffered no pain, and asked that the administratrix be granted the authority to settle the claim arising out of the accident. The petition did not name the defendants against whom the contingent liability was said to exist, nor did it contain any specific allegations concerning the way the accident occurred or the manner in which decedent was killed. The record also reveals that on January 7, 1972, the Honorable Ernest C. Boehm, Probate Judge, signed an order granting settlement. Apparently the order was signed solely on the basis of the petition mentioned above. This was done notwithstanding the fact that MCLA 702.114; MSA 27.3178(184) provides:

"When, for the purpose of settling any claim or any final judgment rendered for damages for wrongful death or existing under the laws of this state relating to the survival of actions, the probate court is petitioned in writing by an executor or administrator asking leave to settle such claim, the court may, with or without notice, conduct a hearing and approve or reject such settlement."

Thus, even though the probate judge had the authority to order a hearing to determine the pertinent facts, he apparently granted this administratrix authority to settle a contingent liability claim without insuring that he was fully informed as to the nature and magnitude of the claim. When he granted the authority to settle he was not aware that the accident had involved a Corvair automobile or that decedent had been burned to death when the gas tank on that automobile exploded. Since the petition seeking authority to settle did not name the defendants, the probate judge was not aware that General Motors was being released. The probate judge could have easily ascertained these facts before deciding whether or not to sign the order, and we believe he should have done so.

the combined consideration of $5,000. Apparently, the consideration was provided by other defendants, defendant General Motors contributing nothing. In answer to defendant's position concerning the releases, plaintiff brought a motion to reform the releases to indicate that there was no intent to release defendant from liability due to loss of society and companionship because of the wrongful death of the minor decedent. Plaintiff argued that it would have been absurd for plaintiff to intend to release defendant from liability resulting from deprivation of society and companionship for the reason that, at the time the release was executed, the law in Michigan apparently held that no such liability existed. See *Breckon v Franklin Fuel Co,* 383 Mich 251; 174 NW2d 836 (1970). As it developed, the apparent law was not the law, as *Smith v Detroit,* 388 Mich 637; 202 NW2d 300 (1972), held that the *Breckon* decision was incorrect. Therefore, when the releases in the instant case were executed, the law indicated that there could be no recovery for loss of society and companionship. However, the *Smith* case retroactively changed that result as to causes of action accruing before March 30, 1972. It appears, however, that the trial court concluded improperly that even a cause of action which was mistakenly believed not to exist was released because of the all-inclusive language contained in the instant releases.

We must ask ourselves whether, in this case, the release signed by plaintiff as administratrix of the estate of her son was fairly and knowingly made. See *Ware v Geismar,* 8 Mich App 627; 155 NW2d 257 (1967). The argument that a decision for plaintiff in this case would create a landslide of litigation does not impress us. In *Denton v Utley,* 350 Mich 332; 86 NW2d 537 (1957), a similar argument

was put forth. After remarking that the same fears had been expressed in several other areas of the law the Court stated:

"It should neither surprise nor deceive us that the ancient argument comes before us today in modern garb. Where once the courts were admonished, with respect to the law of trusts, to roil not the conscience lest any gentleman in England be presumed out of his entire estate, to disturb not the letter of the convey-ance, lest all security transactions be jeopardized, now we are warned to leave untouched the letter of the release, lest no claim ever be settled, and litigations mount. The argument *in terrorem* fails here, as it has always failed, and for precisely the same reason: *We exist solely to do justice and it shall be done.*

"In the particular case before us, involving a release, we confront merely a specialized application of the overriding principle that in its accomplishment of its mission, equity will strike down without hesitation any agreement resulting from oppression, fraud, mutual mistake of the contracting parties, or other evil. The cases rest upon this great principle, not upon the minu-tiae urged. It matters not how sweeping are the words involved. When their content cloaks iniquity they shall be vacated and held for naught. To put it affirmatively, any release, to be sustained, must be 'fairly and know-ingly' made." (Emphasis supplied.) *Denton, supra,* 342; 86 NW2d 537, 541.

It appears clear to this Court that equity must strike down the instant release, if it was not fairly and knowingly made. It appears to this Court that the parties had no way of knowing, at the time the releases were executed, that the estate of the decedent had a cause of action for loss of society and companionship. The releases were also appar-ently executed under the mistaken assumption that decedent had experienced no pain and suffer-ing. There may also be a lack of adequate consider-

ation on the part of General Motors to support its inclusion in the release along with other defendants. If such is the case, the inadequacy of consideration would also convince us that the release of General Motors was not "fairly and knowingly made" by plaintiff.

In *Denton v Utley, supra,* the trial chancellor heard first the evidence concerning the validity of the release, and reformed it, leaving the factual issues to be determined in the action at law. We rule that such a procedure is a proper one to follow in this case. In considering the equitable matters to be considered by the trial chancellor, he shall square his findings with this opinion and the law as set forth in *Denton, supra,* including the following quote:

"We see, first of all, a wide expanse of the law which has had existence since earliest times: equity's traditional relief to contracting parties in cases involving fraud and mistake. In our exercise of this power we are frustrated by no form of words employed. If the parties before us have employed artifice and wile, if they have been deluded and betrayed, even, in many cases, by their own fallibility, we are not powerless to relieve them of the consequences. If the courts be asked, as they have been *(Nygard v Minneapolis Street R Co,* 147 Minn 109, 112; 179 NW 642 [1920]), by one insisting upon the letter of the agreement, how could I possibly have framed the release in order to make it incontestable? What more could I have said than I did? If there are broader, more comprehensive terms than I have used, what are they? To these questions, and all like them, the chancellor's answer remains the same: 'If fraud or mutual mistake has induced the making of an unconscionable contract, courts ought to be more concerned about granting relief, than desirous of clinching future wrongs by making such contracts incontestable.' " *Denton, supra,* 338–339; 86 NW2d 537, 540.

Reversed and remanded to the trial chancellor for a determination on the validity of the release in question, after a full hearing. We retain jurisdiction. Costs to plaintiff.