BARTRAND v CHESAPEAKE & OHIO RAILWAY COMPANY

Docket No. 77-4244. Submitted November 1, 1978, at Grand Rapids.—
Decided December 5, 1978. Leave to appeal denied, 406 Mich
907.

Michael Grzyb was killed in an automobile accident. Martha
Grzyb, decedent's widow, retained an attorney, Rawlings, to
pursue a wrongful death action against Kenneth Cox, the
driver of the other automobile. Mrs. Grzyb indicated to Rawl-
ings that Cox was employed by the Chesapeake and Ohio
Railway Company. Rawlings settled the claim with Cox's insur-
ance carrier for $25,000, and a release was executed releasing
Kenneth Cox, his wife, and "all other persons, firms or corpora-
tions liable or who might be claimed to be liable" for the
accident and death. Rawlings never contacted the Chesapeake
and Ohio Railway Company to determine if Cox was employed
by them. Instead, he altered the release prepared by the
insurance carrier so as to make the check payable solely to
Mrs. Grzyb, which resulted in the probate court not reviewing
or approving the settlement. Then, Rawlings converted the

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 53 Am Jur 2d, Master and Servant § 417 et seq.

Release of (or covenant not to sue) master or servant or principal as
affecting liability of servant or agent for tort or vice versa. 92
ALR2d 533.

[2] Imputation of contributory negligence of servant or agent to
master or principal in action by master or principal against
another servant or agent for negligence in connection with duties.
57 ALR3d 1226.

Imputation of servant's or agent's contributory negligence to mas-
ter or principal. 53 ALR3d 664.

[3] 3 Am Jur 2d, Agency §§ 2, 3.

53 Am Jur 2d, Master and Servant §§ 3, 417.

Release of (or covenant not to sue) master or servant or principal as
affecting liability of servant or agent for tort, or vice versa. 92
ALR2d 533.

[4] 17 Am Jur 2d, Contracts § 143 et seq.

27 Am Jur 2d, Equity §§ 32-42, 71.

54 Am Jur 2d, Mistake, Accident or Surprise §§ 16-21.

[5] 66 Am Jur 2d, Release § 14 et seq.

[6] 66 Am Jur 2d, Release §§ 54-57.

$25,000 to his own use. Although his law firm made good the loss, Rawling's fraudulent conduct prevented probate review of the settlement where the railroad interest might have been discovered and, in that event, the settlement may not have passed probate scrutiny. The $25,000 was divided between Mrs. Grzyb and the deceased's workmen's compensation carrier to the extent of their contribution. Loren Bartrand, administrator of the Estate of Michael A. Grzyb, deceased, and other parties entitled to enforce a wrongful death claim, brought an action against Chesapeake and Ohio Railway in Ottawa Circuit Court. Calvin L. Bosman, J., reformed the release into a covenant not to sue the Coxes, thus permitting further suit against the defendant railroad. Defendant appeals by leave granted. *Held:*

A release, to be sustained, must be fairly and knowingly made. Equitable relief is appropriate where the element of fairness is lacking in the execution of a release. The release was not fairly executed because of the criminal conduct of Mrs. Grzyb's attorney, along with the lack of probate scrutiny of the release whereby the Chesapeake and Ohio Railway Company's interest may have been discovered and it might have been required to contribute to the settlement. The presence of these facts surrounding Mrs. Grzyb's execution of the release provide an appropriate opportunity for equitable relief in the form of reformation of the release into a covenant not to sue and for allowing suit on the merits against the defendant railroad.

Affirmed.

1. MASTER AND SERVANT—RELEASE—RESPONDEAT SUPERIOR.

The release of a servant operates to release a master liable solely under the doctrine of *respondeat superior.*

2. MASTER AND SERVANT—TORTS—NEGLIGENCE—LIABILITY OF EMPLOYER—OPERATION OF LAW.

The liability of an employer, in an action based on the negligence of an employee, arises only by operation of law where the employer did not participate in the commission of a tort.

3. PRINCIPAL AND AGENT—COVENANT NOT TO SUE.

A covenant not to sue an agent does not discharge the principal from liability.

4. EQUITY—OPPRESSIVE AGREEMENTS—FRAUDULENT AGREEMENTS—MUTUAL MISTAKE—EQUITABLE RELIEF.

Equity will strike down without hesitation any agreement resulting from oppression, fraud, mutual mistake of the contracting parties, or other evil.

5. RELEASE—FAIR AND KNOWING TEST.
    Any release, to be sustained, must be fairly and knowingly made.

6. RELEASE—FAIRNESS—EQUITABLE RELIEF.
    Equitable relief is appropriate where the element of fairness is lacking in the execution of a release.

*Varnum, Riddering, Wierengo & Christenson,* (by *Thomas J. Mulder* and *Jeffrey L. Schad),* for plaintiffs.

*Hillman, Baxter & Hammond,* (by *Stephen D. Turner* and *Michael D. Wade),* for defendant.

Before: BEASLEY, P.J., and D. E. HOLBROOK and G. R. COOK,* JJ.

BEASLEY, P.J. Defendant appeals from an order of the trial court which denied defendant's motion for accelerated judgment and reformed a release which purported to relieve defendant of liability into a covenant not to sue an alleged tortfeasor other than defendant.

Following an automobile accident in which Michael Grzyb was killed, Martha Grzyb, decedent's widow, retained an attorney, Charles Rawlings, to pursue a wrongful death action. The vehicle which collided with decedent's truck was operated by Kenneth Cox. Cox allegedly was travelling in a westerly direction when he crossed the median and struck the truck of decedent which was travelling in the eastbound lane. Mrs. Grzyb testified that she indicated to Rawlings that she believed Cox was employed by defendant and was acting within the scope of his employment. Rawlings never contacted defendant with respect to

---

* Circuit judge, sitting on the Court of Appeals by assignment.

that information, but, rather, negotiated a settlement with Cox's insurance carrier for $25,000, the limit on Cox's policy. Pursuant to this settlement, Rawlings forwarded a release, which was signed by the widow, Mrs. Grzyb, the Peoples Bank and Trust Company, executor of decedent's estate, and Loren Bartrand, plaintiff in this action, who, as the representative of decedent's insurance carrier, had a lien on any amount recovered up to the amount of funds it had paid. The terms of the release provided for the discharge from liability of Margaret and Kenneth Cox, "their heirs, executors, administrators, agents and assigns, and all other persons, firms or corporations liable or who might be claimed to be liable * * * ".

After the release was executed, Rawlings added language on the face of the release stating, "Such draft or drafts to payable solely to Martha A. Grzyb". Subsequently, Rawlings forged Mrs. Grzyb's signature and converted the $25,000 to his personal use. However, the law firm with which he was associated made good the loss. Defendant contributed nothing to the settlement.

Plaintiffs contend that Rawlings's fraudulent conduct precluded probate review of the settlement in accordance with MCL 702.114; MSA 27.3178(184), and Rawlings was, thus, able to facilitate his conversion of the funds. Mrs. Grzyb testified she had no intention of releasing defendant or anyone other than the Coxes and their heirs. She also testified that she had read the entire release and understood it. The liability of defendant was left up to her attorney according to Mrs. Grzyb.

If the release signed by Mrs. Grzyb is upheld, defendant's potential liability will be negated. The Michigan courts hold that the release of a servant operates to release a master liable solely under the

doctrine of *respondeat superior.*[1] Liability of the employer arises only by operation of law since he did not participate in the commission of a tort.[2]

However, a covenant not to sue an agent will not discharge the principal from liability.[3] Thus, if the trial court's decision to reform the release into a covenant not to sue is upheld, the principal is not released and the plaintiff may proceed in a suit against defendant.

*Denton v Utley*[4] lays the foundation for the broad line of cases concerning the equitable reformation of releases. The trial court's concern in *Denton* was with an unforeseen injury that was discovered subsequent to the execution of the release. In reforming the release, the court set forth the "fair and knowing" test:

"In the particular case before us, involving a release, we confront merely a specialized application of the overriding principle that in its accomplishment of its mission, equity will strike down without hesitation any agreement resulting from oppression, fraud, mutual mistake of the contracting parties, or other evil. The cases rest upon this great principle, not upon the minutiae urged. It matters not how sweeping are the words involved. When their content cloaks iniquity they shall be vacated and held for naught. To put it affirmatively, any release, to be sustained, must be 'fairly and knowingly' made. *(Farrington v Harlem Savings Bank,* 280 NY 1 [19 NE2d 657]; Keefe, *Validity of Releases Executed under Mistake of Fact,* 14 Fordham L Rev 135 [1945].)"[5]

---

[1] *Geib v Slater,* 320 Mich 316; 31 NW2d 65 (1948), *Witucke v Presque Isle Bank,* 68 Mich App 599; 243 NW2d 907 (1976), *lv den,* 397 Mich 842 (1976), *Drinkard v William J Pulte, Inc,* 48 Mich App 67; 210 NW2d 137 (1973).

[2] *Geib v Slater, supra.*

[3] *Centala v Navrude,* 45 Mich App 282; 206 NW2d 544 (1973).

[4] 350 Mich 332; 86 NW2d 537 (1957).

[5] *Denton, supra,* p 342.

The Court, in *Smith v Flint School District*,[6] refused to reform a release where plaintiffs claimed they were unaware of the employee-employer relationship at the time the release was signed. In *Smith,* the plaintiffs claimed that the "knowing" portion of the *Denton* test was violated and, consequently, they were entitled to relief. The Court did not agree and distinguished the unknown defendant case from the unforeseen injury case in *Denton:*

"Therefore, the reasonable approach would be to consider what the releasor knew or should have known at the time of the signing of the release. In this case, plaintiffs could have discovered the relationship, therefore the instant suit should be barred by the release."[7]

The Court, in *Smith,* distinguished the case from *Chuby v General Motors Corp*[8] which further explains the fair and knowing test set forth in *Denton, supra.* In *Chuby,* the parties had no way of knowing that the cause of action existed at the time of their release, as the cause of action was retroactively recognized by subsequent case law. Also in *Chuby,* the mistaken assumption that the decedent had experienced no pain and suffering when the release was executed, deprived two additional plaintiffs of their claims.

Another case which upheld a release of an employer was *Malone v SCM Corp.*[9] This case may be distinguished from the preceding cases as well as the case at bar in that an offer of settlement was made by the employer which plaintiff rejected. In *Malone,* plaintiff argued that he did not under-

[6] 80 Mich App 630; 264 NW2d 368 (1978).

[7] *Id.* at 634.

[8] 69 Mich App 563; 245 NW2d 134 (1976).

[9] 63 Mich App 11; 233 NW2d 872 (1975).

stand the legal effect of the release. The court, in granting defendant's motion for accelerated judgment, found no evidence of fraud or misrepresentation at the time plaintiff executed the release.

*Centala v Navrude*[10] is most analogous to the instant case. The court reformed a release into a covenant not to sue because of the severity of the ward's injuries; the release inadvertently discharged a party with possible liability without requiring that party to contribute toward the settlement, and the release, under the circumstances, proved not to be in the best interests of the ward.

The court, in *Centala,* could have relied on the test in *Denton, supra,* and found that the release violated both the fair and knowing prongs of the test.

Defendant argues that the reformation of a release depends on a showing of fraud, undue influence, duress, misrepresentation, lack of mental capacity, or mistake. The Court, in *Denton,* indicates otherwise:

"We see, first of all, a wide expanse of the law which has had existence since earliest times: equity's traditional relief to contracting parties in cases involving fraud and mistake. In our exercise of this power we are frustrated by no form of words employed. If the parties before us have employed artifice and wile, if they have been deluded and betrayed, even, in many cases, by their own fallibility, we are not powerless to relieve them of the consequences."[11]

The instant case would seem to be an appropriate one for applying the equitable doctrine of reformation. Although Mrs. Grzyb admitted that she read and signed the release, her testimony

---

[10] *Centala, supra.*
[11] *Denton, supra,* p 338.

indicates that she intended only to relieve the Coxes from further liability. We may assume that if Rawlings was truly representing the widow's interest, he would have pursued the claim against defendant. The deceased earned over a thousand dollars weekly. If Cox was liable and within the scope of his employment, defendants clearly should have been pursued for contribution to the settlement, since the $25,000 paid by Cox's insurance carrier would be inadequate under those circumstances. We do not find the instant case to resemble *Smith, supra,* where plaintiff neglected to discover an employee-employer relationship. Mrs. Grzyb knew of the possible relationship of Cox to defendant and passed that information on to Rawlings. She placed her trust in her attorney, and he betrayed her.

Finally, but for Rawlings's criminal conduct, the reasonableness of the settlement would have come before the probate court for approval prior to its distribution. Had the probate court heard the details of the settlement, it is pure speculation as to whether or not the settlement would have been rejected or approved. The court may have discovered that Cox was an employee of defendant and may have rejected the settlement.[12]

We find the fairness element of the fair and knowing test set forth in *Denton* to be lacking in the execution of the release in the instant case. The facts of the case, the fraud by Rawlings, the lack of probate court scrutiny, the release which found defendant contributing nothing to the settlement, provide an appropriate opportunity for equitable relief.

In so ruling, we recognize that defendant has not in any way been a party to any fraudulent or

---

[12] MCL 702.114; MSA 27.3178(184).

unfair conduct. But, as indicated, this has not been the issue.

The release will stand as a covenant not to sue the Coxes. The plaintiff may now proceed to trial on the merits.

Affirmed.