GRZEBIK v KERR

Docket No. 78-3626. Submitted April 10, 1979, at Detroit.—Decided June 26, 1979.

Plaintiff Barbara R. Grzebik sustained injuries as a result of a collision between the motorcycle on which she was riding, which was being operated by defendant and third-party plaintiff Harold Poling, and the automobile operated by third-party defendant Nelva Ruth Keefer. Also involved in that collision was the motorcycle operated by defendant Nolan R. Kerr, who had as his passenger one Steven Elkins. Kerr initiated a negligence suit against Keefer, and Keefer filed a third-party complaint against Poling. Keefer's insurer offered to settle with all the parties at the policy limits in exchange for full releases from all the parties and the dismissal of the Kerr suit. These conditions were met. Each of the parties signed a release. In exchange for a payment of $33,000 present plaintiff Grzebik released "Keefer and all other persons * * * from all claims * * * of every nature and kind whatsoever".

Plaintiff Grzebik thereafter brought the present suit against Kerr and Poling on the basis of their alleged negligence in operating the motorcycles at the time of the accident. Poling added Keefer as a third-party defendant on the basis of his potential contribution claim against Keefer if plaintiff prevailed. Poling and Kerr moved for accelerated judgment on the basis that the release barred plaintiff's cause of action. The Washtenaw Circuit Court, Patrick J. Conlin, J., granted accelerated judgment for defendants, and, also, dismissed Poling's suit against Keefer. Plaintiff appeals, arguing that all the parties were laboring, at the time of the execution of the release, under the mistaken understanding that plaintiff had no negligence cause of action because of the guest passenger statute, but that such a cause of action became available when the guest passenger statute was held unconstitutional. *Held:*

1. The scope of a release from tort liability which is fairly and knowingly made without concealment, fraud, duress or

REFERENCES FOR POINTS IN HEADNOTES
[1] 28 Am Jur 2d, Estoppel and Waiver § 158.
[2] 28 Am Jur 2d, Estoppel and Waiver § 156.

mutual mistake is governed by the intent of the parties as expressed in terms of the release.

2. The general release from tort liability, running as it did to the automobile driver and all others involved in the collision, operated as a release of the operator of the motorcycle on which plaintiff was riding and of the operator of the other motorcycle involved in the collision. The fact that the release was executed prior to the date that the Supreme Court held that the higher standard of proof required of guest passengers was unconstitutional does not affect the validity of the release, since it is clear that the driver of the automobile intended the release to protect against possible contribution claims which might arise out of changes in the law, and since it was common knowledge at the time of the execution of the release that the guest passenger statute was under attack.

Affirmed

1. RELEASE — TORT LIABILITY — SCOPE — FAIRLY AND KNOWINGLY MADE — MISTAKE — INTENT.

The scope of a release from tort liability which is fairly and knowingly made without concealment, fraud, duress, or mutual mistake is governed by the intent of the parties as expressed in the terms of the release.

2. RELEASE — TORT LIABILITY — APPLICABILITY — SUBSEQUENT CASE LAW — INTENT — KNOWLEDGE.

A general release from tort liability executed as part of a settlement with the driver of an automobile by the passenger on a motorcycle which collided with the automobile, such release running to the automobile driver and all other persons involved in the collision, operates to release the operator of the motorcycle and others involved in the collision from liability, even though the release was executed prior to the date the Supreme Court held the higher standard of proof required of guest passengers to be unconstitutional, where it is clear that the automobile driver intended the release to protect against possible contribution claims which might arise out of changes in the law and it was common knowledge at the time of the execution of the release that the guest passenger statute was under attack.

*Kenneth E. Prather,* for plaintiff.

*Draugelis, Ashton & Scully* (by *Richard T. Hayes),* for defendant Poling.

*Harvey, Kruse & Westen, P.C.* (by *P. J. Collins* and *Michael A. Gunderson*), for defendant Kerr.

*Davis & Fajen,* for defendant Keefer.

Before: BEASLEY, P.J., and ALLEN and D. C. RILEY, JJ.

PER CURIAM. Plaintiff appeals the circuit court's August 30, 1978, order granting accelerated judgment in favor of defendants on the grounds that a release executed by plaintiff barred her cause of action. GCR 1963, 116.1(5). Defendant Poling cross-appeals the dismissal of his third-party complaint against defendant Keefer.

On April 13, 1974, defendants Kerr and Poling were operating their motorcycles on public roads in Ypsilanti. They were allegedly racing one another. Plaintiff was a passenger on the Poling motorcycle, and one Steven Elkins, not a party herein, was a passenger on the Kerr motorcycle. At an intersection the motorcycles collided with a car operated by Keefer. All four persons on the motorcycles were injured, with plaintiff being the most seriously injured.

The four motorcyclists were then represented by the same counsel. On May 22, 1974, defendant Kerr initiated a negligence suit against Keefer, and Keefer filed a third-party complaint joining Poling as a third-party defendant. Plaintiff never started a suit against Keefer. On July 7, 1975, subsequent to negotiations, Keefer's insurer offered to settle with all parties at the policy limit of $50,000. The $50,000 was divided as follows: Grzebik-$33,000, Elkins-$4,000, Poling-$2,000, and Kerr-$11,000. In its offer, the insurer made it clear that the offer was contingent on "full releases of all claims" from all four parties, and dismissal of

the Kerr suit. These conditions were met. The releases signed by each party were entitled "RE-LEASE IN FULL" and were identical except for names and amounts. Plaintiff's release stated that,

"I, Barbara Rose (Turner) [plaintiff], for the sole consideration of $33,000 (Thirty Three Thousand) Dollars, to me in hand paid by Nelva Keefer have released and discharged, and by these presents do for myself, my heirs, executors, administrators and assigns, release and forever discharge said Nelva Keefer and all other persons, firms or corporations from all claims, demands, damages, actions, or causes of action, on account of damage to property, bodily injuries or death, resulting, or to result, from an accident to me which occurred on or about the 13th day of April, 1974, by reason of an auto/motorcycle accident and of and for all claims or demands whatsoever in law or in equity, which I, my heirs, executors, administrators, or assigns can, shall or may have by reason of any matter, cause or thing whatsoever prior to the date hereof.

"It is understood and agreed that this is a full and final release of all claims of every nature and kind whatsoever, and releases claims that are known or unknown, suspected and unsuspected."

Plaintiff signed this release on July 21, 1975.

The instant case was commenced on January 14, 1977, by plaintiff. She sued Poling and Kerr on their alleged negligence in operating their motorcycles which resulted in the accident which injured her. Poling added Keefer as a third-party defendant on the basis of his potential contribution claim against Keefer if plaintiff prevailed in her suit.[1] Defendants Poling and Kerr interposed

---

[1] We note that the parties consistently consider Keefer to be a joint tortfeasor with Kerr and Poling. The relationship is that of concurrent tortfeasors. *Laster v Gottschalk,* 75 Mich App 290; 255 NW2d 210 (1977), *Witucke v Presque Ilse Bank,* 68 Mich App 599; 243 NW2d 907 (1976). See also *Moyses v Spartan Asphalt Paving Co,* 383 Mich 314; 174 NW2d 797 (1970).

plaintiff's release to Keefer as a defense to the suit. The lower court agreed that the release precluded the instant suit and granted accelerated judgment for defendants. Poling's suit against Keefer was dismissed also.

The intent of the parties to a release, expressed in the terms of the release, governs the scope of the release. *Detroit Automobile Inter-Insurance Exchange v Joseph,* 67 Mich App 393; 241 NW2d 221 (1976), *Auto-Owners Ins Co v Higby,* 57 Mich App 604; 226 NW2d 580 (1975). A release covers only the claims intended by the parties to be released. *Auto-Owners Ins Co v Higby, supra,* at 606. A release must be "fairly and knowingly" made. *Denton v Utley,* 350 Mich 332, 342; 86 NW2d 537 (1957), *Farwell v Neal,* 40 Mich App 351, 355; 198 NW2d 801 (1972). Hence, equity will intervene where there is concealment, fraud, duress, or mutual mistake. *Denton v Utley, supra* at 342, *Detroit Automobile Inter-Insurance Exchange v Joseph, supra,* at 396, and our review is *de novo. Farwell v Neal, supra,* at 355.

On appeal and in the court below, plaintiff contends that all parties labored under the mistaken understanding that plaintiff had no negligence cause of action because of the guest passenger statute, MCL 257.401; MSA 9.2101, and consequently her release was not intended to be a release of such a claim. Plaintiff makes this argument because when she executed her release on July 21, 1975 (and when all other parties executed their releases), the guest passenger statute precluded guest passenger suits based on ordinary negligence, but this statute was declared unconstitutional on September 8, 1975, in *Manistee Bank & Trust Co v McGowan,* 394 Mich 655; 232 NW2d 636 (1975), and the holding in *Manistee Bank* was

given retroactive effect. *Dunham v Lowinger,* 395
Mich 793; 235 NW2d 153 (1975), *Old Reliable Fire
Ins Co v Schaub,* 85 Mich App 294; 271 NW2d 206
(1978). Defendants, on the other hand, argue that
the release is broad enough to cover this situation
and it was precisely this type of situation that the
release was intended to cover.

The lower court accepted defendants' position,
and so do we. The broad language of the release on
its face certainly encompasses a negligence claim
such as plaintiff's. Indeed, plaintiff does not sug-
gest otherwise. Plaintiff's position, based on the
theory of mutual mistake, is that nobody realized
that plaintiff was not barred by the guest passen-
ger statute from prosecuting a negligence claim
against the operators of the motorcycles. We can-
not accept plaintiff's reasoning, since the release
was expressly designed to release any and all
claims. The fact that the existence of a certain
claim was not recognized by the parties would be
the very possibility the release was intended to
cover. The fact that in reality the parties could not
know of this possible claim does not affect our
conclusion since, as a matter of law, the claim did
exist and the release was therefore intended to
cover it.

This is not the usual type of case where a
release is attacked on the basis of mutual mistake
as to the extent of injury.[2] Plaintiff is not claiming
additional, previously unknown, injuries. Nor did
plaintiff receive an insubstantial sum in releasing
her claims for $33,000. Nothing has happened to

---

[2] For example, *Van Avery v Seiter,* 383 Mich 486; 175 NW2d 744
(1970), aff'g 13 Mich App 88; 163 NW2d 643 (1968), *Ryan v Alexy,* 373
Mich 50; 127 NW2d 845 (1964), *Hall v Strom Construction Co,* 368
Mich 253; 118 NW2d 281 (1962), *Denton v Utley,* 350 Mich 332; 86
NW2d 537 (1957), Anno: *Avoidance of release of personal injury
claims on ground of fraud or mistake as to extent or nature of
injuries,* 71 ALR2d 82.

plaintiff to make the consideration any less fair now than it was when plaintiff agreed to it. This leads us to an important distinction raised in *Smith v City of Flint School District*, 80 Mich App 630; 264 NW2d 368 (1978). In that case plaintiff executed a release with defendant's employee, unaware that he was an employee, and under well-settled law the release was held to release the defendant-employer and could not be avoided on the grounds of mistake. The distinction noted by the *Smith* Court was that in the usual "unforeseen injury" cases it is virtually impossible to discover the injury, whereas in the *Smith* case an "unknown defendant" was involved which could be discovered, but the plaintiff had simply failed to make the discovery. The instant case falls much closer to the unknown defendant situation than to one of unforeseen injury.

While there is some merit to plaintiff's position that its negligence action against defendants was undiscoverable, under the circumstances of this case it is better to consider the action as one within plaintiff's realm of knowledge. It was common knowledge in the state that the guest passenger statute was under attack. The *Manistee Bank* case had been argued over a year prior to signing of plaintiff's release, and a decision was anticipated. If the parties had not intended for the release to cover potential guest passenger claims, it would have been a simple matter to provide an exception in the release. Moreover, from the record in this case it is apparent that a possible guest passenger claim was a consideration, since Keefer insisted on full release from all parties. Keefer, settling at the maximum limit of her policy, had just cause for concern about any suit in which she might be added for purposes of contribution. The

possibility of a negligence claim against Kerr and/ or Poling was apparent to all—as evidenced by the proceedings in the Kerr-Keefer suit.[3] To the extent it is argued that plaintiff (as opposed to other parties) was unaware of the state of guest passenger law, it cuts against any contention of *mutual* mistake.

At first blush, *Chuby v General Motors Corp,* 69 Mich App 563; 245 NW2d 134 (1976), lends support to plaintiff. In that case plaintiff, as administratrix of her minor son's estate, signed general releases in January, 1972, releasing General Motors and other defendants from all liability in connection with the death of her son when the gas tank in a Corvair automobile in which he was riding exploded. On the date the release was signed, Michigan apparently did not recognize liability for loss of society and companionship in a wrongful death action.[4] Subsequent to the signing of the releases, the Supreme Court, in *Smith v Detroit,* 388 Mich 637; 202 NW2d 300 (1972), held there could be such recovery as to any cause of action accruing before March 30, 1972. In *Chuby,* the trial court held that even a cause of action which was mistakenly believed not to exist was released because of the all-inclusive language contained in the releases. On appeal, this Court reversed, saying:

"It appears clear to this Court that equity must strike down the instant release, if it was not fairly and know-

[3] This brings up an observation which casts some suspicion on plaintiff's position. Plaintiff argues the "unknown" guest passenger claim with respect to both Kerr and Poling. However, plaintiff was the guest passenger only of Poling, and therefore the argument with respect to Kerr is inapposite. Whatever negligence claim now exists against Kerr existed at the time of the release. Yet plaintiff never pursued it. Nor did plaintiff ever pursue any possible claim of gross negligence which always existed against Poling.

[4] See *Smith v Flint School Dist,* 80 Mich App 630, 633; 264 NW2d 368 (1978).

ingly made. It appears to this Court that the parties had no way of knowing, at the time the releases were executed, that the estate of the decedent had a cause of action for loss of society and companionship. *The releases were also apparently executed under the mistaken assumption that decedent had experienced no pain and suffering."* (Emphasis added.) 69 Mich App at 567.

The underscored language quoted above distinguishes *Chuby* from the case before us. In the instant case there was no mistake as to the extent of the injuries. Further, in *Chuby,* the petition in probate court for settlement of the claim stated that decedent's death was instantaneous on impact and that there was no pain and suffering when, apparently, the deceased burned to death and suffered some pain. The probate court's approval of the release was made without the court knowing the full facts or even knowing that General Motors was a party defendant.[5] We seriously question whether the *Chuby* panel would have reversed the trial court had these additional and distinguishing factors not been present. In our opinion *Chuby* falls within the type of case mentioned in footnote 2, *supra,* where the release is attacked on grounds of mistake as to type of injury.

At the time the releases were signed plaintiff's guest passenger status on the Poling motorcycle precluded suit in ordinary negligence against Poling only. She was not precluded from such suit against Kerr or Keefer. Thus, the subsequent decision in *Manistee Bank* does not give plaintiff any wider right than she enjoyed when she signed the releases. At the time of signing the releases, plain-

---

[5] The petition for authority to settle did not name General Motors, and hence, the probate judge who signed the petition without a hearing was unaware he was releasing General Motors.

tiff had a cause of action for gross negligence against Poling. Obviously, the releases given Poling were intended to cover this situation. Finally, it must have been obvious to Keefer's and Kerr's insurers that if the law were to be changed in the *Manistee Bank* case, which had been pending for one year in the Supreme Court, contribution could be asked from Keefer and Kerr.

Accordingly, we cannot accept plaintiff's subsidiary argument that her release was not intended to release claims against Kerr and/or Poling. As mentioned, the release was very broad, containing the language "and all other persons", and avoidance of suits against Kerr and Poling in particular was one of the considerations behind the release. At the very least, Kerr and Poling were intended to be covered by the "all other persons" language.

Affirmed, costs to defendants.