Markman, P.J.
Plaintiff appeals as of right from the order of the lower court granting defendant’s motion for summary disposition pursuant to MCR 2.116(C)(7) (release). We affirm.
This case arises from a May 1994 automobile accident. Plaintiff’s vehicle was struck by a vehicle owned by Boyan Daskal and driven by Veliko Velikov. Defendant David Opper allegedly caused Velikov to swerve into oncoming traffic and strike plaintiff’s vehicle. Without bringing suit, plaintiff filed personal injury claims with Farm Bureau Insurance, the insurer of the Velikov vehicle, and American States Insurance Company, defendant’s insurance carrier. *514 Farm Bureau discussed a “package settlement” with American States, but American States was not interested. Plaintiff ultimately settled with Farm Bureau for $45,000. Plaintiff and Farm Bureau executed a standard release form, which included the following provisions relevant to this appeal:
I/we hereby release and discharge Boyan Daskal and Veliko Velikov, his or her successors and assigns, and all other parties, firms, or corporations who are or might be liable, from all claims of any kind or character which I/we have or might have against him/her or them, and especially because of all damages, losses or injuries to person or property, or both, whether developed or undeveloped, resulting or to result, directly or indirectly, from an accident which occurred on or about May 16, 1994 at [left blank] and I/we hereby acknowledge full settlement and satisfaction of all claims of whatever kind or character which I/we may have against him/her or them by reason of the above-named damages, losses or injuries.
All agreements and understandings between the parties hereto are embodied and expressed herein and the terms of this release and agreement are contractual and not a mere recital. [Emphasis supplied.]
Plaintiff was subsequently unable to negotiate a settlement with American States and filed suit against defendant. Defendant filed an answer and affirmative defenses that did not include the affirmative defense of release; however, defendant subsequently moved for summary disposition on the basis of the release entered into by Farm Bureau and plaintiff. Defendant claimed that the clear and unambiguous language of the release discharged American States from liability, too, even though there was no evidence that it had *515 paid any consideration to plaintiff for the release from liability. The trial court subsequently permitted defendant to file amended affirmative defenses. The trial court also granted defendant’s motion for summary disposition, determining that the broad language of the above release also released defendant and American States from liability. Plaintiff now appeals.[1]
Plaintiff’s principal contention is that the trial court erred in granting defendant summary disposition. We disagree. This Court reviews decisions on motions for summary disposition de novo to determine if the moving party was entitled to judgment as a matter of law. Rheaume v Vandenberg, 232 Mich App 417, 420; 591 NW2d 331 (1998). When reviewing a motion granted pursuant to MCR 2.116(C)(7), we consider all affidavits, pleadings, and other documentary evidence submitted by the parties and, where appropriate, construe the pleadings in favor of the plaintiff. Id. A motion under this subrule should be granted only if no factual development could provide a basis for recovery. Id.
Because defendant clearly fits within the class of “all other parties, firms or corporations who are or might be liable,” we see no need to look beyond the plain, explicit, and unambiguous language of the release in order to conclude that he has been released from liability.[2] “There cannot be any broader classification than the word ‘all,’ and ‘all’ leaves room for no *516 exceptions.” Calladine v Hyster Co, 155 Mich App 175, 182; 399 NW2d 404 (1986).
Concerning the analysis of the dissent, we offer the following observations: First, plaintiff provided and received consideration under the release and the release, therefore, was valid. The validity of the release having been established, we are aware of no legal rule in Michigan that precludes settling parties from waiving whatever rights they choose.
Second, for at least two reasons, it is inappropriate to look to parol evidence here in determining the scope of the release: (a) the language of the release is unambiguous and thereby precludes resort to allegedly contradictory parol evidence, Meagher v Wayne State Univ, 222 Mich App 700, 722; 565 NW2d 401 (1997);[3] and (b) the release contains an explicit merger clause that independently precludes resort to parol evidence. UAW-GM Human Resource Center v KSL Recreation Corp, 228 Mich App 486; 579 NW2d 411 (1998).[4] The dissent gives no effect at all to the *517 merger clause by allowing resort to exactly the same extrinsic evidence as might be allowed absent the merger clause.
Third, while the dissent describes its own rule as an “intent” rule, we would respectfully disagree. Rather, in our judgment, the common-law rule better deserves this description. The common-law rule holds that a general release of “any and all persons” unambiguously releases “any and all parties.” The common-law rule holds that the language of a release should be accorded meaning. It is predicated on the intentions of the parties but, unlike the rule of the dissent, derives such intentions from the language of the release to which they have freely assented. In particular, it is hard to comprehend the dissent’s description of its own rule where it refuses to give effect to the parties’ own merger clause, which specifies that disputes concerning the release are to be resolved exclusively by resort to the language of the release itself. [5]
Fourth, the dissent’s rule gives little credence to the possibility that, by including broad language in the release, the settling parties wanted to avoid the possibility of future legal burdens potentially arising out of lawsuits by plaintiff against third parties. As the Eighth Circuit Court of Appeals has remarked:
*518 The defendant who originally procures the release gains nothing if the plaintiff can sue other joint or concurrent tortfeasors. In such a case, the original defendant is left open to claims for contribution and/or indemnity and may wind up having to litigate the case anyway. [Douglas v United States Tobacco Co, 670 F 2d 791, 794 (CA 8, 1982).]
Given the conclusion of the dissent that even clear release language, coupled with a merger clause, does not afford protection against this prospect, it is hard to understand how finality could ever be achieved through a negotiated release.
Fifth, while we agree with the dissent that this is a case of “first impression” in Michigan with regard to the explicit consideration of the various rules that have evolved concerning the effect of a general release clause, we do note that there are decisions in our state that have adopted the common-law rule. In Grzebik v Kerr, 91 Mich App 482, 486; 283 NW2d 654 (1979), the plaintiff was a passenger on a motorcycle, involved in an automobile accident. She settled with the driver of a car that hit the motorcycle, releasing the driver “and all other persons, firms or corporations from all claims, demands, damages, actions, or causes of action, on account of damage to property, bodily injuries or death, resulting, or to result, from an accident to me which occurred” on the specified date. Id. at 485. The release concluded, “It is understood and agreed that this is a full and final release of all claims of every nature and kind whatsoever, and releases claims that are known or unknown, suspected and unsuspected.” Id. The plaintiff later sued the operator of the motorcycle. This Court affirmed summary disposition for the defendant, noting that “the release was expressly designed to release any *519 and all claims.” Id. at 487. In reaching this conclusion, the Court further observed, “The intent of the parties to a release, expressed in the terms of the release, governs the scope of the release.” Id. at 486 (emphasis supplied), citing Detroit Automobile Inter-Ins Exchange v Joseph, 67 Mich App 393; 241 NW2d 221 (1976); Auto-Owners Ins v Higby, 57 Mich App 604; 226 NW2d 580 (1975).[6]
Sixth, we also disagree with the dissent that MCL 600.2925d; MSA 27A.2925(4),[7] which is based on the Uniform Contribution Among Tortfeasors Act, 12 ULA 194 et seq., in any way compels the result which it reaches. At common law, release of one joint *520 tortfeasor automatically released all joint tortfeasors. The uniform act responded to what many felt was an unfair and inflexible common-law policy—one which also worked to discourage settlements—by allowing a plaintiff to settle with less than all the alleged tortfeasors without discharging claims against the remaining tortfeasors. Rather than assisting in the resolution of the instant controversy, as the dissent suggests, the uniform act addresses an opposite controversy: the release given to only one joint tortfeasor. The act specifies that such a release does not discharge all others “unless its terms so provide.” The instant controversy relates to the release given to “all” tortfeasors and whether such a release, in fact, discharges “all” tortfeasors. These are distinct matters.[8] However, even if the uniform act was thought to have some application by analogy to the instant controversy, its express focus is on the specific “terms” of the release. In place of the common-law presumption that the release of one joint tortfeasor releases all—a presumption that was not necessarily compatible with the language of the release itself— the uniform act substituted a different presumption, but also made clear that this new presumption was to *521 be subordinate to the actual language of the release itself.[9]
Seventh, there is no evidence, as the plaintiff suggests, that the release here was not “fairly and knowingly made.” Denton v Utley, 350 Mich 332, 342; 86 NW2d 537 (1957). Indeed, she does not point to anything specific in support of this proposition, other than her apparent discomfort with the broadness of the release language. We note that the document in question here is not particularly lengthy or complex and there are not multiple documents that must be read in conjunction with one another.
In our judgment, the rule proposed by the dissent, and admittedly adopted by some other jurisdictions, would engender uncertainty among parties to releases where currently there is none, breed opportunities for litigation where currently there are none, and erode the ability of individuals to fashion their own rules for dispute resolution free of the uncertainties of judicial intervention. Because we believe that this rule is ill-advised, and represents an unwarranted departure from traditional common-law principles in Michigan, we affirm the order of the trial court granting summary disposition for the defendant.
Plaintiff also argues that the trial court erred in permitting defendant to amend his affirmative defenses. We again disagree. This Court will not reverse a trial court’s decision to grant or deny a motion to amend a pleading absent an abuse of discretion. Weymers v Khera, 454 Mich 639, 654; 563 NW2d 647 (1997). Plaintiff asserts that she was prejudiced by the deci *522 sion to allow defendant to amend his answer because the memory of the insurance adjuster was not as “fresh” as it previously would have been. “Prejudice” exists if the amendment would prevent the opposing party from receiving a fair trial where, for example, the opposing party would not be able to properly contest the matter raised in the amendment because important witnesses have died or necessary evidence has been destroyed or lost. Id. at 659. Here, the insurance adjuster testified that notwithstanding the delay, he remembered “the main gist of the thing.” Moreover, the insurance file remained available and was, in fact, used by the witness to refresh his recollection of the events. Therefore, the trial court did not abuse its discretion in permitting defendant to amend his affirmative defenses.
Affirmed.
Saad, J., concurred.

 Plaintiff also filed a motion for reformation of release, which was denied. Plaintiff has not challenged that order.

 As the trial court observed, “[T]his release is clear and unambiguous on its face, it was entered into knowingly and intelligently, and it is clear that the plaintiff acknowledged full settlement and satisfaction of all of her claims that may arise out of this accident.”

 The parol evidence rule excludes evidence of prior contemporaneous agreements, whether oral or written, which contradict, vary or modify an unambiguous writing intended as a final and complete expression of the agreement. Ditzik v Schaffer Lumber Co, 139 Mich App 81, 87-88; 360 NW2d 876 (1984), citing NAG Enterprises, Inc v All State Industries, Inc, 407 Mich 407, 410; 285 NW2d 770 (1979).

 For the narrowly drawn fraud and “incompleteness on its face” exceptions to the parol evidence rule, see 3 Corbin, Contracts, § 578, pp 402-411, cited at UAW, supra at 494-495. The dissent’s proposition that the merger clause is effective with regard to everyone but a “stranger” to the release is, of course, with regard to the scope of this release, equivalent to the notion that the merger clause is not effective at all. Whatever the merits generally of the proposition that the parol evidence rule cannot be invoked either by or against a stranger to a contract, Denha v Jacob, 179 Mich App 545, 550; 446 NW2d 303 (1989), such a proposition seems inapposite when the very provision in controversy, and agreed to by the parties to the contract, explicitly relates to the interests of strangers. We emphasize, nevertheless, that the instant legal issue does not concern the *517 rights of strangers, but rather the rights of the parties to a contract to achieve agreed-upon ends, including htigative finality.

 We believe that the dissent further errs in describing the common-law rule as the “flat-bar” rule—and we recognize that this nomenclature is borrowed from the cited academic literature—because the common-law rule erects a “flat bar” only when this is consistent with the language of the release itself. If the release is drawn more specifically, then the more specific language would also presumably be given respect under the common-law rule. There is no presumption in favor of a “flat bar,” merely a presumption that the language selected by the parties themselves is to be treated as binding.

 See also Taggert v United States, 880 F2d 867, 870 (CA 6, 1989), ruling, on the basis of Michigan law, that a clear and unambiguous release that discharges “any and all other persons, associations and corporations” releases all noted classes from liability. Additionally in support of the proposition that the common-law doctrine of releases remains highly viable in the United States, see cases cited at armo: Release of one joint tortfeasor as discharging liability of others under Uniform Contribution Among Tortfeasors Act and other statutes expressly governing effect of release, 6 ALR5th 883, 928-937; Bass, Tort Law, The General Release Forms: Three Distinct Views, 21 Am J Trial Advoc 445 (1997). Still, we do agree with the dissent that there are different schools of opinion with regard to the effect to be given broad general release language. Id. We also acknowledge that Lee v Auto-Owners Ins Co, 201 Mich App 39; 505 NW2d 866 (1993), is inconsistent with Grzebik, but emphasize that it was vacated by the Supreme Court, 445 Mich 908 (1994). In support of the common-law rule, see also Rosenthal v GL & Associates, Inc, unpublished opinion per curiam of the Court of Appeals, issued February 23, 1996 (Docket No. 181226), and Makinen v Speed Queen Co, unpublished opinion per curiam of the Court of Appeals, issued June 23, 1993 (Docket No. 152599), both approvingly citing Grzebik.

 At the time applicable in this case § 2925d provided, in relevant part:
When a release or a covenant not to sue or not to enforce judgment is given in good faith to 1 or 2 or more persons liable in tort for the same injury or the same wrongful death:
(a) It does not discharge any of the other tort-feasors from liability for the irvjury or wrongful death unless its terms so provide. [Emphasis supplied.]

 The dissent cites the plurality opinion in Theophelis v Lansing General Hosp, 430 Mich 473; 424 NW2d 478 (1988). However, the exclusive focus of the Theophelis opinion was on the latter rule. “The United States Supreme Court [in Zenith Radio Corp v Hazeltine Research, Inc, 401 US 321; 91 S Ct 795; 28 L Ed 2d 77 (1971)] has held that a release that clearly intends—as did the release in the instant case—to save the releasor’s rights against another person subject to tort liability does not automatically surrender these rights.” Id. at 504-505. Similarly, this rule was at issue in Avery v United States, 829 F2d 817 (CA 9, 1987), and the cases cited therein.

 The dissent cites McInnis v Harley-Davidson Motor Co, Inc, 625 F Supp 943, 954-955 (D RI, 1986), which appears to characterize reliance on the language of the release itself as a “legal fiction.”